IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **CEDAR SHORES CONDOMINIUM** | ) | |
| **COUNCIL for itself and on behalf of** | ) | |
| **The Association of Owners of the Cedar** | ) | **C.A. No.:** |
| **Shores Condominium,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **MIDDLESEX MUTUAL ASSURANCE** | ) | |
| **COMPANY, MIDDLE OAK MUTUAL,** | ) | |
| **ATLANTIC, SMITH, CROPPER &** | ) | |
| **DEELEY, LLC and EAGLE** | ) | |
| **ADJUSTING SERVICES, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## NOTICE OF REMOVAL

Defendant Eagle Adjusting Services, Inc. (hereinafter "Defendant Eagle Adjusting Services"), provides this Notice of Removal pursuant to the provisions of 28 U.S.C. §§ 1332, 1441 & 1446. As grounds for removal, Defendant Eagle Adjusting Services states as follows:

Introduction

1.    The underlying Delaware state court complaint ("State Court Action") was filed in the Delaware Superior Court in and for Sussex County on November 30, 3007 by Plaintiff Cedar Shores Condominium Council. The State Court Action alleges that Defendant Eagle Adjusting Services may have indirectly or directly caused a delay in Plaintiff's receipt of insurance payments under an insurance agreement. The State Court Action is captioned Cedar Shores Condominium Council for itself and on behalf of the Association of Owners of the Cedar

Shores Condominium, v. Middlesex Mutual Assurance Company, Middle Oak Mutual, Atlantic, Smith, Cropper & Deeley, LLC and Eagle Adjusting Services, Inc., C.A. No. 07C-11-047 (THG), Superior Court of the State of Delaware in and for Sussex County. A copy of the complaint filed in the State Court Action is attached hereto as Exhibit A. This action seeks to hold Defendant Eagle Adjusting Services liable for alleged damages resulting from the breach of an insurance agreement that arose after a fire caused damage to a Cedar Shores Condominium building on or about December 6, 2005.

2.    As of the filing of the State Court Action and continuing to the date of the filing of this Notice of Removal, Defendant Eagle Adjusting Services is a foreign corporation organized under the laws of the State of Indiana. See Ex. A, State Court Action, Complaint at 2. Defendant Eagle Adjusting Services' principal place of business is located in Indiana. Therefore, Defendant Eagle Adjusting Services is a citizen of the state of Indiana. See 28 U.S.C. § 1332(c)(1). Plaintiff is located in and is a citizen of the state of Delaware.

3.    As of the filing of the State Court Action and continuing to the date of the filing of this Notice of Removal, Co-Defendants Middlesex Mutual Assurance Company and its affiliate, Co-Defendant Middlesex Mutual, are located in the state of Connecticut. See Ex. A, State Court Action, Complaint at 2. Therefore, Co-Defendants Middlesex Mutual Assurance Company and Middlesex Mutual are citizens of the state of Connecticut. See 28 U.S.C. § 1332(c)(1).

4.    As of the filing of the State Court Action and continuing to the date of the filing of this Notice of Removal, Co-Defendant Atlantic, Smith, Cropper & Deeley, LLC is a foreign limited liability company organized under the laws of the state of Maryland. See Ex. A,

2

State Court Action, Complaint at 2. Therefore, Co-Defendant Atlantic, Smith, Cropper & Deeley, LLC is a citizen of the state of Maryland. See 28 U.S.C. § 1332(c)(1).

5.    As Plaintiff and Defendants are now, and were at the time of filing, citizens of different states, there is complete diversity of citizenship between these parties pursuant to 28 U.S.C. § 1332.

The Requirements for Federal Jurisdiction Have Been Met

6.    The State Court Action asserts allegations which reflect that the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00) as Plaintiff is seeking general and special damages related to the alleged breach of an insurance agreement and has filed the Complaint as a non-arbitration matter. To bypass mandatory alternative dispute resolution in the State Court Action, Plaintiff's counsel must certify that damages exceed $100,000 exclusive of costs and interest. Super. Ct. Civil Rule 16.1(a). In determining the amount in controversy, this Court should look to the state court complaint and a "reasonable reading of the value" of that complaint. See Angus v. Shiley, Inc., 989 F.2d 142, 145-46 (3d Cir. 1993).

7.    This case is removable to federal court because there is complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy is in excess of $75,000.00, exclusive of interest and costs. Therefore this Court has jurisdiction under 28 U.S.C. § 1332. When the Court has diversity jurisdiction, such actions are properly removed to federal court, to the district and division where the state court action is pending. See 28 U.S.C. § 1441.

8.    All other requirements for removal to federal court have been met. A copy of the complaint in the State Court Action is attached to this Notice as Exhibit A. See 28

U.S.C. § 1446(a). The Notice of Removal has been served on Plaintiff's counsel and notice has been filed with the Delaware Superior Court in Sussex County. See 28 U.S.C. § 1446(d).

        9.     Further, the Notice of Removal is timely. This Notice of Removal is filed within thirty (30) days of receipt of the complaint in the State Court Action by Defendant Eagle Adjusting Services, as required by statute. See 28 U.S.C. § 1446(b). On November 30, 3007, Plaintiff requested service of the summons and complaint upon Defendant Eagle Adjusting Services through the registered agent for Defendant Eagle Adjusting Services. On December 28, 2007, the Sheriff's Return of Service was filed in the State Court Action. See Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 221-23 (3d Cir. 2005) (explaining that removal is timely where notice is filed within 30 days of service); see also Murphy Bros. Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344 (1999) (holding that formal service of complaint triggers defendant's time for removal).

        WHEREFORE, Defendant Eagle Adjusting Services, Inc. respectfully requests that this action be removed from the Superior Court of the State of Delaware in and for Sussex County to the United States District Court for the District of Delaware.

**MARGOLIS EDELSTEIN**

Herbert W. Mondros, Esquire (DE #3308)
750 South Madison Street, Suite 102
Wilmington, DE 19801
(302) 888-1112
(302) 888-1119
hmondros@margolisedelstein.com
Attorney for Defendant, Eagle Adjusting
Services, Inc.

Dated: January 15, 2008

EFiled: Nov 30 2007 4:05PM EST
Transaction ID 17480966
Case No. 07C-11-047 THG

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

### IN AND FOR SUSSEX COUNTY

CEDAR SHORES CONDOMINIUM    :    C.A. No.
COUNCIL for itself and on behalf of the    :
Association of Owners of the Cedar Shores    :
Condominium,    :
   :
         Plaintiff,    :
   :
     v.    :
   :
MIDDLESEX MUTUAL ASSURANCE    :
COMPANY, MIDDLE OAK MUTUAL,    :
ATLANTIC, SMITH, CROPPER &    :
DEELEY, LLC and EAGLE ADJUSTING    :
SERVICES, INC.,    :
   :
         Defendants.    :

### COMPLAINT

NOW COMES, the Plaintiff, Cedar Shores Condominium Council, by and through its counsel, the law firm of Sergovic & Ellis, P.A., and complains as follows:

### THE PARTIES

1.    The Plaintiff, Cedar Shores Condominium Council (hereinafter "Plaintiff" or "Cedar Shores"), are of the elected natural persons which operate the Cedar Shores Condominium under the Code of Regulations (hereinafter the "Code") of the Cedar Shores Condominium, recorded in the Office of the Recorder of Deeds, in and for Sussex County at Georgetown, Delaware in Deed Book 1404 at Page 307&c,[1] the Council established by the Code of Regulations on its owners behalf and on behalf of the Association of Owners of Cedar Shores. Cedar Shores has a mailing address of 30127 Cedar Shores Road, D336CC, Ocean View, Delaware 19970.

2.     Defendant, Middlesex Mutual Assurance Company (hereinafter "Middlesex Mutual") has an address of 213 Court Street, Middletown, Connecticut 06457.

3.     Defendant, Middle Oak Mutual (hereinafter "Middle Oak") has an address of 213 Court Street, Middletown, Connecticut 06457 and is included as a Co-Defendant to the extent that it is affiliated with Middlesex Mutual, operated as agent for Middlesex Mutual, or is a successor or assignee of Middlesex Mutual.

4.     Defendant, Atlantic, Smith, Cropper & Deeley, LLC (hereinafter "Atlantic") is a foreign limited liability company organized under the laws of the State of Maryland and registered to do business in the State of Delaware. As there is no registered agent information listed with the Division of Corporations, service may be made at Atlantic's business address of 7171 Bent Pine Road, Willards, Maryland 21874 under the Delaware Long Arm Statute through the Delaware Secretary of State. Defendant Atlantic is included as a Co-Defendant to the extent that it has directly or indirectly caused the delay in payment by Middlesex Mutual or is an agent for Middlesex Mutual.

5.     Defendant, Eagle Adjusting Services, Inc. (hereinafter "Eagle") is a foreign corporation organized under the laws of the State of Indiana and registered to do business in the State of Delaware. Service of process may be made upon Eagle's registered agent, Corporation Service Company, at 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808. Defendant Eagle is included as a Co-Defendant to the extent that it has directly or indirectly caused the delay in payment by Middlesex Mutual.

---

[1] A copy of the Code of Regulations for Cedar Shores is attached hereto as Exhibit "1."

2

## BACKGROUND

6.     The allegations incorporated in paragraphs 1-5 hereinabove are hereby restated and incorporated by reference.

7.     Plaintiff and Defendant Middlesex Mutual entered into an insurance agreement on September 1, 2005 (hereinafter the "Insurance Agreement"), policy number WACP0100024892. The Insurance Agreement was sold to the Plaintiff by Defendant Atlantic located in Willards, Maryland.  The Insurance Agreement was to insure a seventy-two (72) unit condominium comprised of four (4) buildings of frame construction, including but not limited to the buildings, completed additions, fixtures, and permanently installed equipment and machinery.[2]  Building C was comprised of eighteen (18) units, Building D contains fifteen (15) units, Building E contains twenty one (21) units and Building F contains eighteen (18) units. Building C was one of the buildings covered under and by the Insurance Agreement.

8.     Eighteen (18) units, identified as Building C by the Declaration Plan of the Condominium were completely destroyed by fire on or about December 6, 2005 at 1:00 a.m.[3], which was a covered property loss under the Insurance Agreement.  The cause and origin of the said loss is not known by Plaintiff.

9.     On or about December 6, 2005, Cedar Shores contacted its insurance agent, Atlantic, to notify it of the fire loss.

10.    On or about December 6, 2005, members of Cedar Shores and an agent of Atlantic met at the site to assess the extent of the fire damage.

---

[2] A copy of the Insurance Agreement is attached hereto as Exhibit "2."
[3] A copy of a portion of the Declaration Plan depicting Building "C" is attached hereto as Exhibit "3."

3

11.    On or about December 8, 2007, members of Cedar Shores, Ray Mattheu, a representative from Branmore Construction (hereinafter "Branmore") at the request of Atlantic, and Chap Chancellor of Eagle, the initial Public Insurance Adjuster appointed by Middlesex Mutual, inspected the premises following notification of the fire reported by Cedar Shores.

12.    On or about December 17, 2005, Ray Matheu, Chap Chancellor of Eagle and unit owners of Cedar Shores attended a meeting and decided to initially proceed with a builder selected upon the recommendation of Chap Chancellor of Eagle, Branmore. Plaintiff requested that unit owners provide a list of all unit betterments to be included in the claim. The information was subsequently collected and provided to Chap Chancellor of Eagle.

13.    On or about February 2, 2006, a Letter of Intent from Branmore to commence demolition and the site work around Building C consisting of eighteen (18) Condominium Units, which was a total loss as a result of the December 6, 2005, fire was accepted by Plaintiff. Notwithstanding the total cap of $50,000.00 for Branmore's initial work to be performed for Cedar Shores, Branmore proceeded with construction drawings and other services which were unsatisfactory to Cedar Shores. In fact, Cedar Shores protested paying Branmore its claims for work it performed in excess of $50,000.00 via a letter of Cedar Shores counsel dated January 4, 2007.[4]

14.    Despite Cedar Shores protest and rejection of Branmore's claims beyond $50,000.00, Eagle compelled Cedar Shores to accept a charge against the Insurance Agreement payment of loss, which was applied to the cash value of the loss, in favor of Branmore for approximately $59,000.00 for Branmore's inadequate and useless construction plans, authorized

---

[4] A copy of the protest of Branmore's billing of January 4, 2007 is attached hereto as Exhibit 4."

4

by Eagle, which did not benefit Cedar Shores, thereby reducing the amount of coverage available to Cedar Shores to effect actual reconstruction costs and services related thereto.

15.    Cedar Shores was damaged by being forced to accept a charge against available insurance proceeds for Branmore's work performed at the direction of Eagle, the Public Adjustor for Middlesex, and it should be restored to the position it should have been in a final award of Insurance payment benefits, for the wrongful manipulation of insurance payments to pay for services for which Eagle and/or Middlesex were responsible, but which were wrongfully assessed to reduce the amount of benefits Cedar Shores should have been paid under the Insurance Agreement.

16.    The site for building was not released by Middlesex Mutual until late March 2006. However, fencing went up shortly after signing of Letter of Intent on February 2, 2006, and site cleanup and fencing were completed in or about late March, early April 2006. Thereafter, in or about July or August 2006, Young Adjustment alerted Chap Chancellor of Eagle of potential problems that may arise as a result of the three and one-half month delay in releasing the site. In response, Chap Chancellor of Eagle advised that there would be no problem in extending the claims period.

17.    The unsatisfactory plans submitted by Branmore, the payment of which wrongfully reduced available insurance proceeds ultimately to be paid to Cedar Shores for beneficial actual reconstruction costs and expenses to cover obligations approved by Eagle and/or Middlesex for work they requested Branmore to perform, was a breach of the duty of good faith in discharging Middlesex Mutual's obligation under the Insurance Agreement.

18.    After finding Branmore's construction drawings to be unsatisfactory, Cedar Shores retained Young Adjustment Company (hereinafter "Young Adjustment") on or about July 17, 2006 and Moonlight Architects (hereinafter "Moonlight") on or about July 6, 2006 to represent its interest in replacing the fire destroyed Building C that was a covered loss under the Insurance Agreement.

19.    During the months of August 2006 through December 2006, Young Adjustment prepared rebuild estimates. Moonlight Architecture, Inc. prepared proper drawings, building specs, bid documents and assumed responsibilities as Project Architect.

20.    On or about September 2006, Young Adjustment established a reconstruction cost to rebuild Building C at approximately $2,900,000.00. Cedar Shores subsequently entered into a Sworn Statement in Proof of Loss agreement with Middlesex Mutual for the sum of $2,641,304.32 with an additional $80,888.61 for emergency repairs which totaled $2,722,192.93.[5] The figure of $2,772,192.93 was a compromised figure to establish the limits of coverage as agreed to by Young Adjustment, the Public Adjustor of Cedar Shores and Eagle, the Public Adjustor for Middlesex and approved by the representative principals. Following acceptance of the Sworn Statement in Proof of Loss, $1,200,000.00 was disbursed to Cedar Shores under the Insurance Agreement.

21.    Following the acceptance of the Sworn Statement in Proof of Loss, Moonlight properly submitted invoices monthly to Harry Thorne, authorized representative of Cedar Shores, who authorized payment and forwarded to Mary Regan, Fire Fund Trustee for payment. Copies of all invoices and checks were then forwarded to Young Adjustment, who subsequently

---

[5] A copy of the signed Sworn Statement in Proof of Loss is attached hereto as Exhibit "5."

submitted them to Chap Chancellor of Eagle to account for expended insurance funds to pay for the covered property loss under the Insurance Agent.

22.    In or about December 2006, prior to reconstruction, Moonlight advertised for bids for the reconstruction efforts. Eight potential bidders responded. Moonlight supervised bids and recommended that Miken Builders, Inc. (hereinafter "Miken Builders") be selected as the contractor to perform reconstruction. All bids and bid documents were submitted to Chap Chancellor of Eagle, the then adjuster appointed by Middlesex Mutual. Middlesex Mutual approved Miken Builders in or about January 2007, through its public insurance adjuster, Chap Chancellor of Eagle.

23.    On or about March 29, 2007, Cedar Shores executed the Sworn Statement in Proof of Loss and forwarded same to Middlesex Mutual[5].

24.    On or about April 4, 2007, Cedar Shores notified Miken Builders of a contract awarded to it for the reconstruction of Building C.

25.    Cedar Shores entered into a modified AIA Contract with Miken Builders on or about May 7, 2007 for a Contract Sum of $2,522,530.00. Upon entering into a modified AIA Contract, Miken Builders, in conjunction with the plans prepared by Moonlight, commenced reconstruction of Building C.[6] The Architect employed by Cedar Shores under an AIA Contract is Moonlight[7]. Exhibit "6" provides for the Architect to certify to the Owner its approval of payment for work as performed by Miken to replace the fire destroying building which were to be paid under the Insurance Agreement as a covered loss pertaining to Building C. Exhibit "6" was

---

[6] A copy of the modified AIA Contract is attached hereto as Exhibit "6."
[7] A copy of the Contract between Cedar Shores, as owner, and Moonlight, as architect is attached hereto as Exhibit "7."

7

agreed to by Cedar Shores in reliance that Middlesex would timely fund the agreed to insurance loss amount established by the Sworn Statement in Proof of Loss accepted by Middlesex.

26.    In or about May 2007, Cedar Shores requested payment of Moonlight's invoices that were previously submitted to Eagle on behalf of Middlesex Mutual but remained unpaid. Notwithstanding Cedar Shores' request for payment, no payment was tendered by Middlesex Mutual after Middlesex Mutual paid out the cash value under the Sworn Statement in Proof of Loss.[5]

27.    Although Exhibit "6" was entered into between Cedar Shores and Miken Builders in reliance upon the Sworn Statement in Proof of Loss[5], Middlesex Mutual has failed to timely release funds to pay for services rendered by Miken and approved by Moonlight under the Construction Agreement between Cedar Shores and Miken Builders, Exhibit "6." Notwithstanding, Moonlight and Miken Builders continued to submit monthly invoices for services rendered to Cedar Shores for payment. However, no additional funding was received from Middlesex Mutual from approximately August 2007 to late November 2007.

28.    In or about the beginning of September 2007, Cedar Shores again requested payment on the invoices previously submitted by Moonlight and Miken Builders. In response to Cedar Shores' request, Chap Chancellor of Eagle advised that Cedar Shores would receive payment shortly.

29.    On or about September 4, 2007, Cedar Shores was advised that Middlesex Mutual had reassigned the Cedar Shores claim to Jamie Fauteux, Regional Adjuster for Middle Oak.[8] However, the newly appointed adjuster claimed to have had none of the paperwork that was

---

[8] A copy of the September 4, 2007 letter is attached hereto as Exhibit "8."

8

previously submitted by Cedar Shores to Chap Chancellor of Eagle and therefore requested that the documentation be resent. Cedar Shores complied with the request and resubmitted all the documentation regarding the work performed within its possession, for which payment was requested. Notwithstanding that such documentation had previously provided to Chap Chancellor of Eagle.

30.     On or about September 18, 2007, Young Adjustment forwarded invoices and AIA documents outlining payments and funds Cedar Shores was required to pay during construction to Jamie Fauteux, Regional General Adjuster for Middle Oak.[9] By letter, Young Adjustment advised that there was a total of $1,106,956.75 of withheld depreciation, architect fees and code upgrades and requested that Middlesex Mutual release $830,217.52 of recoverable depreciation architect fees and code upgrades under the Insurance Agreement thereby enabling construction bills to be paid timely by Cedar Shores upon completion of work for which Miken and Moonlight were entitled to payment under the respective contracts with Cedar Shores.[10]

31.     Notwithstanding the extensive documentation submitted to Middlesex Mutual as requested on or about September 28, 2007, Jamie Fauteux responded to Young Adjustment's letter of September 18, 2007 and advised that the documentation submitted was insufficient to support the claim.[11]

32.     On and after November 1, 2007, any additional information requested by Jamie Fauteux was forwarded via email and overnight mail.[12] Notwithstanding Cedar Shores best efforts to supply full documentation available to it evidencing work performed to Middlesex

[9] A copy of the September 18, 2007 letter (without enclosures) is attached hereto as Exhibit "9."
[10] See Exhibit "9."
[11] A copy of the September 28, 2007 letter is attached hereto as Exhibit "10."
[12] A copy of the email dated November 1, 2007 is attached hereto as Exhibit "11."

9

Mutual. Middlesex Mutual has wrongfully refused to accept the documentation submitted as evidence of work which has in fact been performed and thereby wrongfully refused to timely tender payment under the Insurance Agreement to Cedar Shores.

33.     As a result of Middlesex Mutual's failure to timely release funds, Plaintiff has been unable to timely pay for services performed which it agreed to pay Miken and Moonlight in reliance upon Middlesex Mutual's acceptance of the Sworn Statement in Proof of Loss.[4]  On November 2, 2007, Miken Builders sent a letter to Moonlight advising that payment for work performed was due on October 29, 2007 and as of November 2, 2007 it had not been paid.[13]

34.     As a result of the delays in payment under the Insurance Agreement, on November 2, 2007, counsel for Cedar Shores requested a written extension of the time limitation under the Insurance Agreement for filing suit by extending the limitation period to two years plus 150 days from the date of loss.[14]  No response to Cedar Shores' request has been received from Middlesex Mutual within the time limits of the request.

35.     On November 8, 2007, Young Adjustment again forwarded to Jamie Fauteux of Middle Oak via federal express a copy of the AIA Contract as well as copies of the Daily Job Reports from Miken Builders[15] as requested by Middle Oak and Middlesex Mutual as an alleged condition of payment under the Insurance Agreement.

36.     On November 15, 2007, counsel for Cedar Shores advised Jamie Fauteux of Middle Oak that all of the available documentation had been submitted and requested to receive payment under the Insurance Agreement.[16]

---

[13] A copy of the November 2, 2007 letter from Miken Builders is attached hereto as Exhibit "12."
[14] A copy of the November 2, 2007 letter from Sergovic & Ellis, P.A. is attached hereto as Exhibit "13."
[15] A copy of the November 8, 2007 letter from Young Adjustment is attached hereto as Exhibit "14."
[16] A copy of the November 15, 2007 letter is attached hereto as Exhibit "15."

37.    Notwithstanding Cedar Shores' best efforts to submit all documentation available to it, and additional charges by Moonlight to comply with the excessive and unwarranted demands for documentation beyond architect certification for approval of payment[17] to evidence payment due under the approved Sworn Statement in Proof of Loss, on November 16, 2007, counsel for Middlesex Mutual alleged that it has not received any response to its request for additional information, including, a copy of the AIA Contract, which was submitted prior to the date of the letter.[18]  By letter dated November 16, 2007, Middlesex Mutual advised that it would make an alleged " 'good faith' disbursement of funds in the amount of $300,000.  That disbursement is made based on the expectation that the Condominium Association, through its public adjuster and through you will promptly provide the supporting documentation which Middlesex Mutual has been seeking since September 4, 2007."[19]

38.    On November 21, 2007, counsel for Cedar Shores received a check in the amount of $300,000.00 made payable to Cedar Shores, Sergovic & Ellis, P.A. and Young Adjustment, thereby requiring that all three entities endorse the check in order to present it for payment which prolonged the Plaintiff's ability to utilize those funds to address in part sums overdue to Miken and Moonlight.[20]

39.    Notwithstanding the $300,000.00 alleged good faith payment by Middlesex Mutual, which has been paid out, Cedar Shores is exposed for approximately $250,000.00 in past due claims of Miken and approximately $2,300.00 from Moonlight which have not been timely

---

[17] A copy of Moonlight's billing for dealing with insurance issues is attached hereto as Exhibit"16", which should be added to the amount of insurance proceeds for Defendant's "Bad Faith" demands.
[18] A copy of the November 16, 2007 letter is attached hereto as Exhibit "17."
[19] *See* Exhibit "17."
[20] Copies of the check dated November 16, 2007 and envelope dated November 19, 2007 are attached hereto as Exhibit "18."

paid by Middlesex Mutual therefore exposing Cedar Shores to claims of beach of its contracts with Miken and Moonlight.

## COUNT I – BREACH OF INSURANCE AGREEMENT

40.    The allegations incorporated in paragraphs 1- 39 hereinabove are hereby restated and incorporated herein by reference.

41.    The Insurance Agreement was enforced and binding upon the Defendant Middlesex Mutual when the fire loss was sustained on or about December 6, 2005.

42.    Reconstruction of Building C commenced in accordance with a Sworn Statement in Proof of Loss approved by Middlesex Mutual which was submitted by Cedar Shores and accepted by Middlesex Mutual under the requirements and provisions of the Insurance Agreement.

43.    Cedar Shores has contracted to have Building C reconstructed and has incurred architect costs and expenses in reliance upon Middlesex Mutual performing under the Insurance Agreement and Cedar Shores has submitted all necessary documentation to Middlesex Mutual to receive payment under the Insurance Agreement and the approved Sworn Statement in Proof of Loss.

44.    Notwithstanding Middlesex Mutual's allegations that it has not received all of the requested documentation to support its obligation to make payments to Cedar Shores under the Insurance Agreement, Cedar Shores has complied with all reasonable conditions precedent to Middlesex Mutual's obligation to make payments under the Insurance Agreement.

12

45.     Middlesex Mutual has breached the Insurance Agreement by delaying payment or not making payments to Cedar Shores when due under the Insurance Agreement and in accordance with the Sworn Statement in Proof of Loss in bad faith.

46.     Cedar Shores has been damaged by Middlesex Mutual's wrongful action. As a result of Middlesex Mutual's wrongful action of withholding payments due to Cedar Shores under the Insurance Agreement, Cedar Shores is exposed to the impending potential mechanic's liens being placed against its property, directly caused by Middlesex Mutual's failure to provide timely payment under the Insurance Agreement and delay damages claims against it from Moonlight and Miken. Middlesex Mutual's wrongful action has caused Cedar Shores to be in breach of its contracts with Miken and Moonlight for failure to timely pay for services performed to reconstruct Building C, which was a covered loss under the Insurance Agreement.

## COUNT II – BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

47.     The allegations incorporated in paragraphs 1-46 above are hereby restated and incorporated herein by reference.

48.     Cedar Shores, through Young Adjustment and Moonlight, has timely submitted to Middlesex Mutual all available documentation within its possession or contact to prove it is entitled to receive payment under the approved and accepted Sworn Statement in Proof of Loss and the Insurance Agreement.

49.     Notwithstanding Cedar Shores' best efforts to submit all documentation available to it and requested by Middlesex Mutual, Middlesex Mutual continues to allege that it has delayed payment due to its non-receipt of documents to evidence work performed to reconstruct Building C.

13

50.     With the exception of the disbursement made by Middlesex Mutual in the amount of $300,000.00 received by counsel for Cedar Shores on November 21, 2007, Middlesex Mutual has ignored Cedar Shores' requests for payment under the approved Sworn Statement in Proof of Loss, after it had disbursed the cash value of the loss, as calculated under the Sworn Statement in Proof of Loss.[4]

51.     Middlesex Mutual has further ignored Cedar Shores' requests for a written extension of time for filing suit under the Insurance Agreement until after the time that Plaintiff had to authorize its counsel to prepare a complaint to protect Cedar Shores interests under the Insurance Agreement, evidencing Middlesex Mutual Bad Faith in discharging its obligation under the Insurance Agreement.

52.     Middlesex Mutual's failure to timely respond to Cedar Shores' claims under the Sworn Statement in Proof of Loss and Insurance Agreement or to timely execute a written extension to the time limitation for filing suit under the Insurance Agreement, notwithstanding a prior reassurance that there would be no problem in securing an extension due to Middlesex Mutual's 3 ½ month delay in releasing the site, constitutes a breach of the covenant of good faith and fair dealing and evidences Middlesex Mutual's bad faith in discharging its obligation under the Insurance Agreement and approved Sworn Statement in Proof of Loss.

53.     Cedar Shores has been damaged by Middlesex Mutual's lack of good faith in providing payment and discharging its obligation under the Insurance Agreement and approved Sworn Statement in Proof of Loss.

14

54.    As a result of Middlesex Mutual's "bad faith" in providing payment and discharging its obligation under the Insurance Agreement and approved Sworn Statement in Proof of Loss, Middlesex Mutual should be found liable for punitive damages.

WHEREFORE, Plaintiff prays:

A.    That Defendant, Middlesex Mutual, be ordered to comply with the approved Sworn Statement in Proof of Loss and tender payment to Cedar Shores for all sums due as an insured party under the Insurance Agreement;

B.    That Cedar Shores be awarded Court costs and reasonable attorneys' fees as a result of the filing of this claim against Defendants;

C.    That Cedar Shores be awarded punitive damages as a result of Middlesex Mutual's bad faith in failing to provide timely payments under the Insurance Agreement and approved Sworn Statement in Proof of Loss;

D.    To the extent that Defendant, Middle Oak, has indirectly or directly caused the delay in payment by Middlesex Mutual, that Cedar Shores be awarded punitive damages against it;

E.    To the extent that Defendant, Atlantic, Smith, Cropper and Deeley, LLC has indirectly or directly caused the delay in payment by Middlesex Mutual, that Cedar Shores be awarded punitive damages against it;

F.    To the extent that Defendant, Eagle Adjusting Services, Inc. has indirectly or directly caused the delay in payment by Middlesex Mutual, that Cedar Shores be awarded punitive damages against it;

G.    Cedar Shores be awarded damages against the Defendant for all damages caused to Cedar Shores for lack of timely payment to its vendor, which should have been paid when payments were due from Cedar Shores, due to lack of timely funding by the Defendants under the Insurance Agreement;

H.    An increase in the amount of funds payable to Cedar Shores from either Middlesex Mutual and/or Eagle Adjusting Services, Inc. for any payments reducing the amount of insurance proceeds available to Cedar Shores for the actual cost to reconstruct Building C and actual expenses related thereto, which were reduced by payments to Branmore above $50,000.00, as initially approved by Cedar Shores on February 2, 2006;

I.    Damages in the amount of the full payment of the approved Sworn Statement in Proof of Loss;

J.    Damages for increases in the costs and expenses incurred by Cedar Shores to comply with unreasonable demands by Defendants to prove construction costs, after actual cash value was paid to Cedar Shores ;and

16

K.    For costs of this proceeding, including reasonable attorneys' fees if authorized at

law and in equity, due to the bad faith or breach of the Defendant of its obligations to Cedar

Shores.

**SERGOVIC & ELLIS, P.A.**

/s/ John A. Sergovic, Jr. (#623)
John A. Sergovic, Jr., #623
9 North Front Street
P. O. Box 875
Georgetown, DE 19947
(302) 855-9500
*Attorneys for Plaintiff, Cedar Shores*
*Condominium Council*

DATED:    November 30, 2007

17

## CERTIFICATE OF SERVICE

I, Herbert W. Mondros, hereby certify that on this 15th day of January, 2008, a true and correct copy of the foregoing Notice of Removal was served via First Class, U.S. mail, postage pre-paid, on the following counsel of record:

> John A. Sergovic, Jr., Esquire
> Sergovic & Ellis, P.A.
> 9 North Front Street
> P.O. Box 875
> Georgetown, DE 19947

**MARGOLIS EDELSTEIN**

Herbert W. Mondros, Esquire (DE #3308)
750 South Madison Street, Suite 102
Wilmington, DE 19801
(302) 888-1112
(302) 888-1119
hmondros@margolisedelstein.com
Attorney for Defendant, Eagle Adjusting
Services, Inc.

5

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Cedar Shores Condominium Council for itself and on behalf of The Association of Owners of the Cedar Shores Condominium

**(b)** County of Residence of First Listed Plaintiff  Sussex
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
John A. Sergovic, Jr., Esq.
Sergovic & Ellis, P.A.
9 North Front Street, P.O. Box 875
Georgetown, DE 19947

## DEFENDANTS
Middlesex Mutual Assurance Company, Middle Oak Mutual, Atlantic, Smith, Cropper & Deeley, LLC and Eagle Adjusting Services, Inc.

County of Residence of First Listed Defendant  Connecticut
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

Attorneys (If Known)
Herbert W. Mondros, Esq.
Margolis Edelstein
750 South Madison Street, Suite 102
Wilmington, DE 19801  (302)888-1112

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

❏ 1  U.S. Government
    Plaintiff

❏ 3  Federal Question
    (U.S. Government Not a Party)

❏ 2  U.S. Government
    Defendant

☒ 4  Diversity
    (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                          and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ❏ 1 | Incorporated *or* Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ❏ 5 | ❏ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❏ 610 Agriculture | ❏ 422 Appeal 28 USC 158 | ❏ 400 State Reapportionment |
| ❏ 120 Marine | ❏ 310 Airplane | ❏ 362 Personal Injury - | ❏ 620 Other Food & Drug | ❏ 423 Withdrawal | ❏ 410 Antitrust |
| ❏ 130 Miller Act | ❏ 315 Airplane Product | Med. Malpractice | ❏ 625 Drug Related Seizure | 28 USC 157 | ❏ 430 Banks and Banking |
| ❏ 140 Negotiable Instrument | Liability | ❏ 365 Personal Injury - | of Property 21 USC 881 | | ❏ 450 Commerce |
| ❏ 150 Recovery of Overpayment | ❏ 320 Assault, Libel & | Product Liability | ❏ 630 Liquor Laws | **PROPERTY RIGHTS** | ❏ 460 Deportation |
| & Enforcement of Judgment | Slander | ❏ 368 Asbestos Personal | ❏ 640 R.R. & Truck | ❏ 820 Copyrights | ❏ 470 Racketeer Influenced and |
| ❏ 151 Medicare Act | ❏ 330 Federal Employers' | Injury Product | ❏ 650 Airline Regs. | ❏ 830 Patent | Corrupt Organizations |
| ❏ 152 Recovery of Defaulted | Liability | Liability | ❏ 660 Occupational | ❏ 840 Trademark | ❏ 480 Consumer Credit |
| Student Loans | ❏ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ❏ 490 Cable/Sat TV |
| (Excl. Veterans) | ❏ 345 Marine Product | ❏ 370 Other Fraud | ❏ 690 Other | | ❏ 810 Selective Service |
| ❏ 153 Recovery of Overpayment | Liability | ❏ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ❏ 850 Securities/Commodities/ |
| of Veteran's Benefits | ❏ 350 Motor Vehicle | ❏ 380 Other Personal | ❏ 710 Fair Labor Standards | ❏ 861 HIA (1395ff) | Exchange |
| ❏ 160 Stockholders' Suits | ❏ 355 Motor Vehicle | Property Damage | Act | ❏ 862 Black Lung (923) | ❏ 875 Customer Challenge |
| ❏ 190 Other Contract | Product Liability | ❏ 385 Property Damage | ❏ 720 Labor/Mgmt. Relations | ❏ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ❏ 195 Contract Product Liability | ❏ 360 Other Personal | Product Liability | ❏ 730 Labor/Mgmt.Reporting | ❏ 864 SSID Title XVI | ❏ 890 Other Statutory Actions |
| ❏ 196 Franchise | Injury | | & Disclosure Act | ❏ 865 RSI (405(g)) | ❏ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❏ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ❏ 892 Economic Stabilization Act |
| ❏ 210 Land Condemnation | ❏ 441 Voting | ❏ 510 Motions to Vacate | ❏ 790 Other Labor Litigation | ❏ 870 Taxes (U.S. Plaintiff | ❏ 893 Environmental Matters |
| ❏ 220 Foreclosure | ❏ 442 Employment | Sentence | ❏ 791 Empl. Ret. Inc. | or Defendant) | ❏ 894 Energy Allocation Act |
| ❏ 230 Rent Lease & Ejectment | ❏ 443 Housing/ | **Habeas Corpus:** | Security Act | ❏ 871 IRS—Third Party | ❏ 895 Freedom of Information |
| ❏ 240 Torts to Land | Accommodations | ❏ 530 General | | 26 USC 7609 | Act |
| ❏ 245 Tort Product Liability | ❏ 444 Welfare | ❏ 535 Death Penalty | **IMMIGRATION** | | ❏ 900Appeal of Fee Determination |
| ❏ 290 All Other Real Property | ❏ 445 Amer. w/Disabilities - | ❏ 540 Mandamus & Other | ❏ 462 Naturalization Application | | Under Equal Access |
| | Employment | ❏ 550 Civil Rights | ❏ 463 Habeas Corpus - | | to Justice |
| | ❏ 446 Amer. w/Disabilities - | ❏ 555 Prison Condition | Alien Detainee | | ❏ 950 Constitutionality of |
| | Other | | ❏ 465 Other Immigration | | State Statutes |
| | ❏ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

❏ 1  Original
    Proceeding

☒ 2  Removed from
    State Court

❏ 3  Remanded from
    Appellate Court

❏ 4  Reinstated or
    Reopened

❏ 5  Transferred from
    another district
    (specify)

❏ 6  Multidistrict
    Litigation

❏ 7  Appeal to District
    Judge from
    Magistrate
    Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Notice of Removal pursuant to the provisions of 28 U.S.C. §§ 1332, 1441 & 1446
Brief description of cause:
Breach of Insurance Contract

## VII. REQUESTED IN COMPLAINT:
❏ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  ❏ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE                         DOCKET NUMBER

DATE
January 15, 2008

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____  MAG. JUDGE_____

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. _____  0 8 -  3 2

# ACKNOWLEDGMENT
# OF  RECEIPT  FOR AO FORM  85

## *NOTICE OF AVAILABILITY OF A*
## *UNITED STATES MAGISTRATE JUDGE*
## *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF _____ COPIES OF AO FORM 85.

_____
1/15/08
(Date forms issued)

X _____
(Signature of Party or their Representative)

X Ben Loogheed
(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action